# UNITED STATED COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

HLDS (B) STEEL SDN BHD AND
HLD CLARK STEEL PIPE CO., INC.,

*Plaintiffs,*

*v.*

UNITED STATES,

*Defendant,*

and

WELDED TUBE USA, INC.,
WHEATLAND TUBE COMPANY,
AND VALLOUREC STAR L.P.,

*Defendant-Intervenors*

Court No. 21-00638

## <u>ORDER</u>

Upon consideration of the motion for judgment on the administrative record filed by plaintiffs, the responses thereto filed by the defendant and the defendant-intervenors, and all other papers and proceedings herein, it is hereby:

**ORDERED** that the motion is **DENIED**; and it is further

**ORDERED** that the U.S. Department of Commerce's final determination is sustained; and it is further

**ORDERED** that plaintiffs' complaint is **DISMISSED**.

It is **SO ORDERED**.

_____
Honorable M. Miller Baker, Judge
U.S. Court of InternationalTrade

Dated: _____, 2022
        New York, New York

# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

|  |  |
|---|---|
| HLDS (B) STEEL SDN BHD AND<br>HLD CLARK STEEL PIPE CO., INC.,<br><br>*Plaintiffs,*<br><br>*v.*<br><br>UNITED STATES,<br><br>*Defendant,*<br><br>and<br><br>WELDED TUBE USA, INC.,<br>WHEATLAND TUBE COMPANY,<br>AND VALLOUREC STAR L.P.,<br><br>*Defendant-Intervenors* | Court No. 21-00562<br><br>PUBLIC DOCUMENT |

## DEFENDANT-INTERVENORS' RESPONSE BRIEF IN OPPOSITION TO THE MOTION FOR JUDGMENT ON THE AGENCY RECORD

<div style="margin-left:40%">

Roger B. Schagrin, Esq.
Luke A. Meisner, Esq.
Benjamin J. Bay, Esq.
SCHAGRIN ASSOCIATES
900 Seventh Street, NW, Suite 500
Washington, DC 20001
(202) 223-1700

*Counsel to Welded Tube USA, Inc.,*
*Wheatland Tube Company, and*
*Vallourec Star, L.P.*

</div>

Dated: August 19, 2022

# TABLE OF CONTENTS

**STATEMENT PURSUANT TO RULE 56.2(c)(1)** ................................2

I.    Administrative Determination Under Review ............................2

II.    Issues Presented for Review...........................................................2

**STATEMENT OF FACTS** ...................................................................3

**STANDARD OF REVIEW** ..................................................................4

**ARGUMENT** .........................................................................................6

I.    Commerce Lawfully Found That The HLD Companies' Assembly Or Completion Of OCTG In Brunei And The Philippines Is Minor Or Insignificant ................................................................................6

II.    Commerce's Determination That Action Is Appropriate To Prevent Evasion Was Reasonable...........................................11

III.   Conclusion ....................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Al Ghurair Iron & Steel v. United States*, 536 F.Supp.3d 1357 (Ct. Int'l Trade 2021). ....................................................................... 11, 13

*Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984).................................................................................... 8

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938) ...................... 7

*Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927 (Fed. Cir. 1984)................................................................................... 7, 8

*Max Fortune Indus. Co. v. United States*, 37 C.I.T. 549 (2013)............. 15

*Mitsubishi Heavy Indus., Ltd. v. United States*, 275 F.3d 1056 (Fed. Cir. 2001)...................................................................................... 8

*Pesquera Mares Australes Ltda. v. United States*, 266 F.3d 1372 (Fed. Cir. 2001) ................................................................................ 9

*Suramerica de Aleaciones Laminadas, C.A. v. United States*, 44 F.3d 978 (Fed. Cir. 1994) ................................................................. 7

*United States Steel Group v. United States*, 96 F.3d 1352 (Fed. Cir. 1996)...................................................................................... 8

## STATUTES

19 U.S.C. § 1516a(b)(1)(B)(i) ........................................................ 7

19 U.S.C. § 1677(24) ................................................................... 14

19 U.S.C. § 1677j ................................................................. 9, 15, 17

19 U.S.C. § 1677j(b)(1).................................................................. 16

19 U.S.C. § 1677j(b)(1)(E)....................................................... 15, 17

19 U.S.C. § 1677j(b)(2)................................................................. 10

19 U.S.C. § 1677j(e)(1)-(3) ........................................................... 16

## OTHER

Omnibus Trade Act of 1987, S. Rep. No. 100-71, (1987)........................ 13

# GLOSSARY

**Commerce**
United States Department of Commerce

**HLD Companies**
HLDS (B) Steel Sdn Bhd and HLD Clark Steel Pipe Co., Inc.

**IDM**
Issues and Decision Memorandum

**ITC**
International Trade Commission

## UNITED STATES COURT OF INTERNATIONAL TRADE
### BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| HLDS (B) STEEL SDN BHD AND<br>HLD CLARK STEEL PIPE CO., INC.,<br><br>*Plaintiffs,*<br><br>*v.*<br><br>UNITED STATES,<br><br>*Defendant,*<br><br>and<br><br>WELDED TUBE USA, INC.,<br>WHEATLAND TUBE COMPANY,<br>AND VALLOUREC STAR L.P.,<br><br>*Defendant-Intervenors* | Court No. 21-00562<br><br>PUBLIC DOCUMENT |

### DEFENDANT-INTERVENORS' RESPONSE BRIEF IN OPPOSITION TO THE MOTION FOR JUDGMENT ON THE AGENCY RECORD

Pursuant to USCIT Rule 56.2 and the Court's scheduling order, Defendant-Intervenors Welded Tube USA, Inc., Wheatland Tube Company, and Vallourec Star, L.P. submit the following response in opposition to the motion for judgment on the agency record filed by Plaintiffs HLDS (B) Steel Sdn Bhd and HLD Clark Steel Pipe Co., Inc. (the "HLD Companies") in the above-captioned action.

<u>**STATEMENT PURSUANT TO RULE 56.2(c)(1)**</u>

## I.    Administrative Determination Under Review

The administrative determination under review is the

Department of Commerce's ("Commerce") final results in the

circumvention inquiries published as *Oil Country Tubular Goods From*

*the People's Republic of China: Final Affirmative Determinations of*

*Circumvention*, 86 Fed. Reg. 67,443 (Dep't Commerce Nov. 26, 2021)

("*Final Determinations*"), Appx01000-01001, and accompanying Issues

and Decision Memorandum ("IDM"), Appx01002-01021. The period

examined in these circumvention inquiries was January 1, 2017 to

November 30, 2020.

## II.    Issues Presented for Review

1. Whether Commerce's determination that the HLD Companies'
   assembly or completion of OCTG in Brunei and the Philippines
   was minor or insignificant is supported by substantial evidence
   and in accordance with law.

<u>Defendant-Intervenors' Position</u>: Yes, Commerce's finding that the HLD

Companies' assembly or completion of OCTG in Brunei and the

Philippines is minor or insignificant is supported by substantial

evidence and in accordance with law. Specifically, Commerce's

comparative analysis of the production and investments involved in

making welded OCTG in Brunei and the Philippines from Chinese-made hot-rolled substrate vis-à-vis the production of that substrate in China is not only reasonable and supported by substantial evidence, but is also supported by precedent of this Court. Plaintiffs' arguments to the contrary are merely extra-statutory attempts to circumscribe Commerce's analysis. Moreover, Plaintiffs' arguments, if validated, would create loopholes in the trade laws to permit circumvention in certain factual scenarios, contrary to the intent of Congress.

2. Whether Commerce's determination that a circumvention finding was appropriate to prevent evasion is reasonable.

<u>Defendant-Intervenors' Position</u>: Yes, Commerce reasonably considered that its finding of circumvention was appropriate to prevent evasion. Moreover, Plaintiffs' arguments with respect to the role of the International Trade Commission ("ITC") in a circumvention inquiry not only have no support in the statute, but they are contrary to the specific role given to the ITC in a circumvention inquiry under the law.

## **STATEMENT OF FACTS**

Defendant-Intervenors agree with the statement of the facts as presented in Defendant's response brief (ECF 34 at 3-7).

## STANDARD OF REVIEW

The standard of review requires that the Court uphold an agency determination as lawful unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Suramerica de Aleaciones Laminadas, C.A. v. United States*, 44 F.3d 978, 985 (Fed. Cir. 1994) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In evaluating Commerce's determination, the Court must decide whether "the administrative record contain{s} substantial evidence to support" Commerce's decision and whether that decision was "rational." *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984). A plaintiff must do more than simply point to contradictory evidence in the record to overturn an agency's decision. "{T}he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Id*. (citations omitted). To the extent, therefore, that a plaintiff claims the evidence before the agency

4

"could be open to multiple interpretations, its argument does not require, or even allow, reversal." *Mitsubishi Heavy Indus., Ltd. v. United States*, 275 F.3d 1056, 1062 (Fed. Cir. 2001) (citing *Matsushita*, 750 F.2d at 933). In addition, a plaintiff may not ask the Court to re-weigh the evidence and decide the case for the agency, as the role of the Court is not to question the agency's decisions about the weight or quality of the evidence. *See United States Steel Group v. United States*, 96 F.3d 1352, 1356-57 (Fed. Cir. 1996) (it is the agency's task to evaluate and assign weight to the evidence); *see also Matsushita*, 750 F.2d at 933 (it is not the weight of the evidence, but whether it reasonably supports a rational decision, that is evaluated by a reviewing court). The Court may not substitute its judgment or its interpretation of the evidence for that of the agency. *See Matsushita*, 750 F.2d at 936.

In reviewing Commerce's interpretation of a statutory provision, this Court is guided by the principles set forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984). Under *Chevron*, a court reviewing an agency's interpretation of a statute must begin with the statutory test: "{i}f the intent of Congress is clear, that is

the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." 467 U.S. at 842-43 (citations omitted). If this Court finds that the statute is silent or ambiguous with respect to the specific question at issue, the question for the Court is whether the Commission's interpretation is based on a permissible interpretation of the statute. *Id.* at 842. The agency's reasonable interpretations of its statutory responsibilities are entitled to judicial deference. *Id.* at 844; *see also Pesquera Mares Australes Ltda. v. United States*, 266 F.3d 1372, 1379-80 (Fed. Cir. 2001).

Defendant-Intervenors agree with the detailed discussion of the legal framework regarding circumvention inquiries under 19 U.S.C. § 1677j set out in Defendant's response brief. *See* ECF 34 at 12-16.

## ARGUMENT

## I.    Commerce Lawfully Found That The HLD Companies' Assembly Or Completion Of OCTG In Brunei And The Philippines Is Minor Or Insignificant

The statute in 19 U.S.C. § 1677j(b)(2) instructs Commerce, as part of its anti-circumvention inquiry, to determine whether "the process of assembly or completion is minor or insignificant." In doing so, Commerce is instructed to consider multiple criteria, including "the level of investment in the foreign country," and "the nature of the

production process in the foreign country." 19 U.S.C. § 1677j(b)(2). As the HLD Companies do not produce their own hot-rolled steel substrate for use in processing OCTG, Commerce analyzed both of these criteria by comparing: (1) the level of start-up investment and the production processes of a hot-rolled steel facility in China; to (2) the investment and operations of Plaintiffs' facilities in the third countries, consistent with Commerce's analysis in prior anti-circumvention inquiries. Appx01007-01014. Ultimately, Commerce correctly determined that the level of investment required for an OCTG finishing facility is minor compared to that of an integrated hot-rolled steel production facility, and that the process of making hot-rolled coils is far more intensive than the HLD Companies' process of making welded OCTG from Chinese-made hot-rolled substrate. *Id*. Plaintiffs challenge the reasonableness of this aspect of Commerce's determination.[1]

---

[1] Plaintiffs also challenge Commerce's determination that the HLD Companies' assembly or completion of OCTG in Brunei and the Philippines is minor or insignificant based on additional extra-statutory and semantic assertions. These assertions are without foundation and should be rejected for the reasons set out in Defendant's brief. ECF 34 at 16-27.

This same issue arose in *Al Ghurair Iron & Steel v. United States* in this Court. In *Al Ghurair*, the plaintiff challenged the reasonableness of Commerce's analysis that compared the levels of investment by third country finishers of corrosion-resistant steel in the UAE (who used Chinese-made hot-rolled steel inputs) to the level of investment of integrated hot-rolled and corrosion-resistant mills in China. *Al Ghurair Iron & Steel v. United States*, 536 F.Supp.3d 1357, 1371-1377 (Ct. Int'l Trade 2021). This Court found that Commerce's comparative analysis on this point was, in fact, reasonable. *Id*.

Plaintiffs' proposition that Commerce should limit its analysis of the entire manufacturing process of welded OCTG to only the further processing that takes place in the third country, and then to only allow a comparison of that investment and those operations with a facility in China or the United States with identical manufacturing limitations, would ultimately restrict Commerce by forcing them to look at the general investment and production process of OCTG finishing operations in isolation. Plaintiffs' argument is, essentially, that the production facilities for OCTG in Brunei and the Philippines are significant on their own, and, therefore, that Commerce must determine

that the level of investment and the production process is not minor or insignificant.

Plaintiffs' contention is an attempt to prevent any affirmative circumvention determination based only on the nature of the product reviewed. In other words, Plaintiffs are arguing that any steel product that may be circumventing an existing order should be free of scrutiny regardless of any other facts supporting a circumvention finding, merely because the investment required to establish finishing operations in a third country would be considered expensive in isolation.

Nothing in the statute, nor in the legislative history, puts an absolute cap on the level of third-country investment over which evasion is permitted. Applying such an exclusionary rule – when Congress has made no such exclusion – would not only undermine the circumvention statute, but also go against the original Congressional intent underlying the circumvention statute. Congress intended to provide Commerce with the discretion to adapt to "different cases {that} present different factual situations" by avoiding bright-line rules, as Congress "expects the Commerce Department to use this authority to

the fullest extent possible to combat diversion and circumvention." Omnibus Trade Act of 1987, S. Rep. No. 100-71, (1987) at 100-101.

Plaintiffs' argument "ignores the comparative aspect of a determination of whether the level of investment is minor or insignificant." *See Al Gruhair*, 536 F.Supp.3d at 1372. Without a reference point for comparison to the level of investment required to produce OCTG that includes production of its primary inputs (*i.e.,* the level of investment of integrated Chinese producers), Commerce would have no context to evaluate whether the level of investment required to turn hot-rolled steel into OCTG (*i.e.,* the level of investment of OCTG finishers in Brunei or the Philippines) is minor. In such a vacuum, a requirement placing a hard, arbitrary cap on the value of investment, without context to truly evaluate the difference between a further processing facility and a facility that produces the substrate used in that further processing facility, would give certain industries a license to circumvent. This Court should reject Plaintiffs' attempt to give themselves such a license.

## II.   Commerce's Determination That Action Is Appropriate To Prevent Evasion Was Reasonable

Plaintiffs assert that the statute requires Commerce to make an affirmative finding of "appropriateness" in order to make a final conclusion of circumvention. ECF 33 at 54-60. Specifically, Plaintiffs argue that Commerce cannot find that circumvention exists unless the volume of OCTG exports from Brunei and the Philippines meet the negligibility requirements applied by the ITC in its injury analysis under 19 U.S.C. § 1677(24). *Id.* at 55.[2] This attempt to supplant the statutory requirements in circumvention inquiries after orders are imposed with the statutory requirements applicable to antidumping and countervailing duty investigations in the first instance is contrary to the statutory scheme and should be rejected.

---

[2] Plaintiffs also argue that Commerce's self-initiation of these inquiries, and the domestic industries' "tepid" participation by merely entering appearances, providing surrogate country and value information, filing a rebuttal brief, and attending a hearing, each make Commerce's appropriateness finding unreasonable. ECF 33 at 55-57. For the reasons set out in Defendant's brief, these arguments are without merit and should be rejected. ECF 34 at 42-44.

11

As pointed out by the Defendant, the "circumvention statute does not require that the ITC make an injury determination in connection with a circumvention inquiry." ECF 34 at 43 (citing Appx 01017). Instead, Commerce only has to determine that action is appropriate to prevent evasion. 19 U.S.C. § 1677j(b)(1)(E). Indeed, this Court has found that "the statute does not impose a numerical threshold or a *de minimis* exception—a company is either circumventing the order or it is not." *Max Fortune Indus. Co. v. United States*, 37 C.I.T. 549, 559 (2013) (citing 19 U.S.C. § 1677j(b)(1)(E)). In *Max Fortune Indus. Co. v. United States*, this Court recognized that the question regarding the appropriateness of action in anti-circumvention cases hinges on "whether the {} Order has been and continues to be circumvented." *Id.* at 559. When Commerce can answer that question in the affirmative based on its analysis of the statutory requirements, then Commerce can appropriately take action under 19 U.S.C. § 1677j(b)(1)(E). *Id.* As such, there is no *de minimis*, negligibility, or other injury exceptions provided for in Commerce's circumvention inquiries.

Despite the statutory language, Plaintiffs still assert that Commerce "must justify why it overturned the ITC's well-reasoned

exclusion of {Brunei and the Philippines} as de minimis from its affirmative injury determinations" in order to support a circumvention finding as appropriate in this case. ECF 33 at 60. This assertion, however, completely ignores the fact that consideration of the effect of Commerce's circumvention finding in the context of the ITC's prior injury findings are explicitly provided for elsewhere in the statute. They have no bearing on this case.

Specifically, the statute provides for a process of notification by Commerce to the ITC regarding the inclusion of the circumvented material under an antidumping and/or countervailing duty order, the right to request consultations by the ITC, and, if the ITC believes "that a significant injury issue is presented by the proposed inclusion," the ITC has the ability to provide written advice to Commerce as to "whether the inclusion would be inconsistent with the affirmative determination of the {ITC} on which the order or finding is based." 19 U.S.C. § 1677j(e)(1)-(3). If such advice is given, Commerce is only required to "take into account {this} advice provided by the {ITC}… before making a determination." 19 U.S.C. § 1677j(b)(1).

13

As such, Plaintiffs' position is not only extra-statutory, but also redundant. In these inquiries, Commerce determined that all of the statutory elements under 19 U.S.C. § 1677j(b)(1) were satisfied, supporting a circumvention finding against imports of OCTG from Brunei and the Philippines made from Chinese hot-rolled substrate. Appx01000-01021. Commerce notified the Commission of its determinations of circumvention per its statutory obligation. Appx04630-04631. The ITC did not request consultations with Commerce. In other words, the ITC determined that inclusion of OCTG from Brunei and the Philippines made from Chinese substrate is consistent with the ITC's affirmative determination in its original investigations. Plaintiffs' contention that 19 U.S.C. § 1677j(b)(1)(E) somehow obligates Commerce to reconsider the ITC's decision – which the ITC already determined was not worthy of reconsideration – is unfounded.

Plaintiffs argue that this Court "should not countenance {} agency overreach." ECF 33 at 60. Yet, Plaintiffs take the position that this Court should order Commerce to bypass the explicit role of the ITC in circumvention inquiries set out by Congress in order to give those that

14

evade trade remedy orders *carte blanche* to continue their evasion without consequences. Plaintiffs' position directly conflicts with the statutory scheme set out by Congress. Commerce considered the appropriateness of its actions within the structure of the circumvention statute. Commerce also followed the explicit requirements for soliciting the involvement of the ITC in its inquiries. The ITC never indicated that any reconsideration of its original injury determination was required. As such, Commerce's determination that action was appropriate to prevent circumvention in this case was supported by substantial evidence and in accordance with law.

## III. Conclusion

For the reasons in this and Defendant's brief, (*see* ECF 34 at 16-44), this Court should reject Plaintiffs' challenge to a reasonable Commerce determination and uphold Commerce's *Final Determinations* as supported by substantial evidence and in accordance with law. Defendant-Intervenors, therefore, respectfully request that Plaintiffs' motion for judgment on the agency record be denied.

Respectfully submitted,

*/s/ Benjamin J. Bay*
Roger B. Schagrin, Esq.
Luke A. Meisner, Esq.
Benjamin J. Bay, Esq.
SCHAGRIN ASSOCIATES
900 Seventh Street, NW, Suite 500
Washington, DC 20001
(202) 223-1700

*Counsel to Welded Tube USA, Inc.,*
*Wheatland Tube Company, and*
*Vallourec Star, L.P.*

Dated: August 19, 2022

## **<u>CERTIFICATE OF COMPLIANCE</u>**

I hereby certify that the foregoing response brief contains 3,288 words (including text, quotations, footnotes, headings, and attachments) and therefore complies with the word limitation set forth in the Court's Chamber's Procedures.


Dated: August 19, 2022                    <u>/s/ *Benjamin J. Bay*</u>
                                                          Benjamin J. Bay