**Slip Op. 24-6**

# UNITED STATES
# COURT OF INTERNATIONAL TRADE

**Court No. 21-00638**

HLDS (B) STEEL SDN BHD and
HLD CLARK STEEL PIPE CO., INC.,

*Plaintiffs*,

v.

UNITED STATES,

*Defendant*,

and

WELDED TUBE USA, INC.,
WHEATLAND TUBE COMPANY, and
VALLOUREC STAR L.P.,

*Defendant-Intervenors*.

Before: M. Miller Baker, Judge

## OPINION

[The court denies Plaintiffs' motion for judgment on the agency record and sustains the Commerce Department's final determination.]

Dated: January 23, 2024

*Gregory S. Menegaz*, deKieffer & Horgan, PLLC, of Washington, DC, argued for Plaintiffs. With him on the briefs were *Alexandra H. Salzman* and *Vivien J. Wang*.

*Hardeep K. Josan*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of New York, NY, argued for Defendant. With her on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General; *Patricia M. McCarthy*, Director; and *Claudia Burke*, Assistant Director. Of counsel on the brief was *Paul K. Keith*, Senior Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce of Washington, DC.

*Benjamin J. Bay*, Schagrin Associates of Washington, DC, argued for Defendant-Intervenors. With him on the brief were *Roger B. Schagrin* and *Luke A. Meisner*.

*Baker*, Judge: In this case, two foreign manufacturers challenge the Department of Commerce's finding that the production of certain oil piping[1] in Brunei and the Philippines for export to the United States circumvented antidumping and countervailing duty orders covering such piping from China.[2] For the reasons explained below, the court sustains the Department's determination.

---

[1] The technical name is "welded oil country tubular goods."

[2] *See Certain Oil Country Tubular Goods from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order*, 75 Fed. Reg. 28,551 (Dep't Commerce May 21, 2010); *Certain Oil Country Tubular Goods from the People's Republic of China: Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order*, 75 Fed. Reg. 3203 (Dep't Commerce Jan. 20, 2010).

I

To "combat circumvention of antidumping duty or countervailing duty orders, a domestic interested party may allege that changes to an imported product constitute[ ] circumvention under 19 U.S.C. § 1677j." *Tai-Ao Aluminium (Taishan) Co. v. United States*, 983 F.3d 487, 489 (Fed. Cir. 2020) (cleaned up) (quoting 19 C.F.R. § 351.225(a) (2020)). "When such issues arise, Commerce may initiate an anti-circumvention inquiry and issue 'scope rulings' that 'clarify the scope of an order or suspended investigation with respect to particular products.' " *Id.* at 489–90 (citing 19 C.F.R. § 351.225(a), (g)–(j)). "Commerce may then 'determine that certain types of articles are within the scope of a duty order, even when the articles do not fall within the order's literal scope.' " *Id.* at 490 (quoting *Deacero S.A. de C.V. v. United States*, 817 F.3d 1332, 1337 (Fed. Cir. 2016), and citing 19 U.S.C. § 1677j).

One way that clever producers and importers may seek to circumvent duty orders is to first ship a product's components to a third country for completion or assembly before export to the United States. Congress anticipated this possibility in 19 U.S.C. § 1677j(b), which authorizes Commerce to extend the scope of such orders to those products when, *inter alia*, "the process of assembly or completion" in the third country is "minor or insignificant," *id.* § 1677j(b)(1)(C),[3] and the value created in the home country "is a significant

---

[3] In considering whether the process of assembly or completion is "minor or insignificant," the statute directs the Department to consider five criteria. *See id.* § 1677j(b)(2).

portion of the total value" of the product as finally exported to this nation, *id.* § 1677j(b)(1)(D). Assuming that those threshold requirements are satisfied, the statute mandates that the Department consider certain additional factors before expanding the scope of a duty order. *See id.* §§ 1677j(b)(1)(E), 1677j(b)(3).

## II

### A

In 2020, Commerce on its own initiative opened "country-wide anti-circumvention inquiries to determine whether imports of certain [oil piping] completed in Brunei and the Philippines using inputs manufactured in . . . China are circumventing the antidumping duty and countervailing duty orders" on such piping from China. Appx03952.[4] The Department selected four mandatory respondents, including Bruneian producer HLDS (B) Steel Sdn Bhd and Filipino producer HLD Clark Steel Pipe Co., Ltd. (collectively HLD). Appx01026.

Commerce's final determination concluded that imports of oil piping assembled or completed in Brunei and the Philippines using steel inputs from China circumvented duty orders on such piping from the latter. Appx01000–01001. The Department accordingly in-

---

[4] Information available to the Department "indicate[d] that third countries are likely processing Chinese-origin [steel] or other significant inputs into [oil piping] before exportation to the United States." Appx03839 n.7.

cluded products from the former countries within the scope of the orders applicable to China. *Id.*

B

HLD brought this suit under 19 U.S.C. §§ 1516a(a)(2)(A)(ii) and (B)(vi) to challenge Commerce's final determination. *See* ECF 8. The court has subject-matter jurisdiction under 28 U.S.C. § 1581(c).

Three members of the domestic industry intervened as defendants. ECF 20. HLD then moved for judgment on the agency record. ECF 33; *see also* USCIT R. 56.2. The government (ECF 34) and the intervenors (ECF 35) opposed, HLD replied (ECF 38), and the court then heard oral argument.

In § 1516a(a)(2) actions such as this, "[t]he court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). That is, the question is not whether the court would have reached the same decision on the same record—rather, it is whether the administrative record as a whole permits Commerce's conclusion.

> Substantial evidence has been defined as more than a mere scintilla, as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. To determine if substantial evidence exists, we review the record as a whole, including evidence that supports as well as evidence that fairly detracts from the substantiality of the evidence.

*Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (cleaned up).

In addition, Commerce's exercise of discretion in § 1516a(a)(2) cases is subject to the default standard of the Administrative Procedure Act, which authorizes a reviewing court to "set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see Solar World Americas, Inc. v. United States*, 962 F.3d 1351, 1359 n.2 (Fed. Cir. 2020) (explaining that in cases reviewed under 28 U.S.C. § 2640(b), "section 706 review applies since no law provides otherwise").

### III

### A

In assessing whether the "process of assembly or completion" in a third country is "minor or insignificant," 19 U.S.C. § 1677j(b)(1)(C), Commerce explained that it considers, "among other things, the level of investment in the third country, the nature of the production process in the third country, and the extent of production facilities in the third country." Appx01007 (citing 19 U.S.C. § 1677j(b)(2)). For purposes of these factors, the Department compared HLD's production of oil piping in Brunei and the Philippines to "integrated steel production mills in China." Appx01012. It reasoned that "[a]lthough hot-rolled steel is not in the same class or kind of merchandise as [oil piping]," Appx01007, HLD produced its piping from steel "and the production of hot-rolled steel is [included in] the production of [oil piping]." *Id*.

HLD takes aim at this comparison, arguing that Commerce should have compared it to an oil pipe producer, not an integrated Chinese steel producer. The company asserts that "Commerce's conclusory remark that the production of primary steel forms is more complex than the production of [oil piping] is debatable." ECF 33-1, at 18. That may be, but when the factual record is debatable, the Department gets the benefit of the doubt.

Setting that aside, the Federal Circuit's recent decision in *Al Ghurair Iron & Steel LLC v. United States*, 65 F.4th 1351 (Fed. Cir. 2023), resolves this issue. Like HLD, the *Al Ghurair* plaintiff argued that "Commerce legally erred by comparing [that company's] investment to make [corrosion-resistant steel] with Chinese manufacturers' investment to make hot-rolled or cold-rolled steel" and contended that the Department should have compared its cost of producing corrosion-resistant steel to Chinese corrosion-resistant producers' cost. *Id.* at 1360. The court rejected that theory, finding that "Commerce reasonably explained that its comparison indicated what portion of the total value of the merchandise subject to these inquiries is accounted for by the last step of processing." *Id.* (cleaned up). So too here—the Department reasonably explained why it compared the production of oil piping in Brunei and the Philippines to the Chinese production of the steel components of that piping: "[T]he level of investment and production facilities is much larger and the production processes are more complex for the production of hot-rolled steel than for the production of [oil piping]." Appx01007.

HLD further argues that "[o]nly recently has Commerce developed a practice of finding that third country producers of articles of steel not under an AD/CVD order are circumventing an AD/CVD order on the steel article from a different subject country because they use hot-rolled steel from the subject country." ECF 33-1, at 25–26. The company contends that use of the circumvention statute in this way "is not Commerce's 'standard practice,' " *id.* at 27, and that the Department "created this theory and practice of using the circumvention statute against companies sourcing hot-rolled steel from a subject country out of whole cloth," *id.* Again, *Al Ghurair* resolves this issue because the Federal Circuit found that the Department's analysis, and its use of the entire manufacturing process instead of "just the final steps," was consistent with the latter's prior determinations. 65 F.4th at 1360. While HLD objects that "Commerce has never justified the change in its comparison analysis" and then says that the Department's current practice is unreasonable, ECF 33-1, at 35, *Al Ghurair* forecloses that argument.[5]

---

[5] HLD also challenges Commerce's statement that the cost of the production of steel "is relevant to whether a producer would reasonably move its further processing across borders to avoid an order." Appx01007. The company contends that the Department previously disclaimed the relevance of intent for purposes of anti-circumvention. *See* ECF 33-1, at 17 (citing *Certain Corrosion-Resistant Steel Products from Taiwan*, Issues and Decision Memorandum at 20 (Dep't Commerce June 1, 2021)). Because Commerce provided several reasons for comparing the production of oil piping in Brunei and the Philippines to steel production in China, any inconsistency by the Department in this

B

HLD next contests Commerce's finding that the "process of assembly or completion in Brunei or the Philippines was minor compared to that of integrated steel mills in China." Appx01014. The company argues that the statute requires the Department to determine whether a respondent's manufacturing processes in a third country "are *mere* assembly or completion operations." ECF 33-1, at 44 (emphasis added). It further contends that "[o]nly if the answer is 'yes' " to that question should Commerce decide "whether the assembly or completion is minor or insignificant." *Id.* (citing 19 U.S.C. § 1677j(b)(1)(B), (C)).

Relatedly, HLD asserts that its operations in Brunei and the Philippines are "manufacturing," which it maintains is different from "assembly or completion." *Id.* at 48. According to the company, its "manufacturing process turns a sheet of steel into . . . finished [oil piping] that is ready to be put into service . . . ," *id.* at 52, a much more extensive process than mere "screwdriver assembly operations," *id.* at 45 (quoting Statement of Administrative Action Accompanying the Uruguay Round Agreements Act (SAA), H.R. Doc. 103–316, vol. 1, 1994 U.S.C.C.A.N. 4040, 4216).[6]

---

passing remark is harmless error. *Cf. SolarWorld Americas*, 962 F.3d at 1359 (Commerce's alleged error was harmless when it "had essentially no impact on [a respondent's] antidumping duty rate").

[6] The SAA "shall be regarded as an authoritative expression by the United States concerning the interpretation

The statute, however, does not "contemplate a distinction between manufacturing and completion or assembly." *Macao Com. & Indus. Spring Mattress Mfr. v. United States*, 437 F. Supp. 3d 1324, 1329 (CIT 2020). We know this because the statute equates "completion or assembly" with "production process." *See* 19 U.S.C. § 1677j(b)(2)(C) (directing Commerce, "[i]n determining whether the process of assembly or completion is minor or insignificant," to "take into account" various considerations, including "the nature of the *production process* in the [third] country") (emphasis added). A dictionary defines "manufacturing" as "[t]he action or process of manufacturing something; *production*, fabrication." Oxford English Dictionary (online edition) (emphasis added). Because the statute treats "completion or assembly" as synonymous with "production process,"[7] the Department was not required to first make a specific finding as to the former terms as HLD contends.

Instead, Commerce's duty was to determine whether HLD's "completion or assembly" of oil piping in Brunei and the Philippines was "minor or insignificant" given the criteria outlined in § 1677j(b)(2). The

---

and application of the Uruguay Round Agreements and this Act in any judicial proceeding in which a question arises concerning such interpretation or application." *Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*, 66 F.4th 968, 972 (Fed. Cir. 2023) (quoting 19 U.S.C. § 3512(d)).

[7] Thus, the SAA's reference to "screwdriver assembly operations" plainly alludes to production operations in a third country that are "minor or insignificant." 19 U.S.C. § 1677j(b)(1)(C).

Department did exactly that, explaining at length that "[t]he vast majority of the production process necessary to produce [oil piping] occurs in China." Appx01013. As the company fails to challenge that determination—instead placing all its argument eggs in its statutory interpretation basket—the court sustains Commerce's "minor or insignificant" finding as supported by substantial evidence.

C

Finally, HLD contests Commerce's determination that anti-circumvention measures were "appropriate." Appx01016; *see also* 19 U.S.C. § 1677j(b)(1)(E) (requiring the Department to "determine[ ] that action is appropriate under this paragraph to prevent evasion" of a duty order). The company contends that such a finding was not appropriate here because oil piping from Brunei and the Philippines has "only a minimal presence on the U.S. market." ECF 33-1, at 55. It also complains that Commerce has not given an adequate explanation for self-initiating the investigation. *Id.* at 55–59. As the government responds, *see* ECF 34, at 42–44, however, the statute does not require the Department to either explain why it initiates an anti-circumvention investigation or consider the extent to which a product under investigation has penetrated the U.S. market.

What the statute instead directs Commerce to consider before taking anti-circumvention action are patterns of trade, whether the manufacturer of the inputs is affiliated with the producer in the third country who assembles or completes the product, and whether ship-

ments of the inputs to the third country have increased since the original duty order was imposed. *See* 19 U.S.C. § 1677j(b)(3). As the government argues, *see* ECF 34, at 40–41, that's what the Department did. *See* Appx01039–01040. Because the agency considered those criteria before acting, it necessarily considered whether such action was "appropriate" for purposes of § 1677j(b)(1)(E).[8]

\* \* \*

The court denies HLD's motion for judgment on the agency record and instead grants judgment to the government and Defendant-Intervenors. *See* USCIT R. 56.2(b). A separate judgment will issue. *See* USCIT R. 58(a).

Dated: January 23, 2024    /s/ *M. Miller Baker*
       New York, NY       Judge

---

[8] HLD also asserts—without laying any foundation for the argument—that "Commerce must justify why it overturned the ITC's well-reasoned exclusion of [Brunei and the Philippines] from its affirmative injury determinations." ECF 33-1, at 60. The Commission's material injury determination in an antidumping or countervailing duty proceeding, however, has no bearing on Commerce's obligations under the statute's anti-circumvention provisions.